UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 5:19-cv-00026-FDW

| | |
|---|---|
| TEON JAMELL WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ERIK A. HOOKS, Secretary, ) | |
| N.C. Dept. of Public Safety, and, KENNETH ) | |
| LASSITER, Director of Prisons, ) | |
| ) | |
| Respondents. ) | |
| ) | |

THIS MATTER is before the Court upon Respondents' Motion for Summary Judgment (Doc. No. 7) seeking denial of Petitioner Teon Jamell Williams' *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254 (Doc. No. 1). Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondents' motion for summary judgment be GRANTED, and Petitioner's petition for Writ of Habeas Corpus be DENIED.

## I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who, on July 1, 2013, in the Superior Court of Iredell County, was indicted by a grand jury for two counts of possession with intent to manufacture, sell, or deliver ("PWIMSD") a Schedule I controlled substance, listing "Methylethcathinone" for Count One and "Methylone" for Count Two. The grand jury also issued bills of indictment charging Petitioner with maintaining a dwelling to keep or sell controlled substances and with having a habitual felon status. On December 19, 2013, the trial court granted the State's motion to amend the PWIMSD indictment to add the numerical prefix "4-" to Count

1

One such that it read "4-Methylethcathinone" (rather than "Methylethcathinone" as the indictment had originally alleged in error).

On January 8, 2014, a jury trial was held in Iredell County with the Honorable Julia Lynn Gullet presiding. The jury returned a verdict finding Petitioner guilty on all charges, and the trial judge entered judgment on the jury's verdict. Petitioner was sentenced to two consecutive terms of 90 to 120 months of imprisonment in cases 13 CRS 2530, 52432-33. The North Carolina Court of Appeals (NCCOA) filed a published opinion on July 21, 2015, vacating Count One of the indictment along with one of the two 90–120 month sentences because the trial court erred in allowing the State to amend the bill of indictment. State v. Williams, 242 N.C. App. 361, 774 S.E.2d 880 (2015). Count Two and the singular remaining 90–120 month sentence as well as the other remaining convictions were upheld. Id.

On September 14, 2015, in cases 15 CRS 3580-81, Petitioner was indicted based on the same facts for PWISMD a Schedule I controlled substance, listed as "4-Methylethcathinone." Petitioner's pre-trial motions to suppress were denied. On February 1, 2016, Petitioner, represented by Alexander Mendaloff, III, entered an Alford plea to this charge. In response, Judge Gullet sentenced Petitioner to the precise terms of his plea agreement, for a term of 41–62 months imprisonment. As the transcript of the plea bargain indicates, Petitioner gave notice of his intent to appeal the denial of his motions to suppress. (Doc. No. 8-20).

In an opinion published on March 7, 2017, the NCCOA affirmed Petitioner's judgement and sentence, and the North Carolina Supreme Court (NCSC) denied his Petition for Discretionary Review (PDR) on June 9, 2017. Williams, 252 N.C. App. 231, 796 S.E.2d 823, disc. review denied, 369 N.C. 754, 799 S.E.2d 624 (2017).

On August 7, 2017, Petitioner filed a pro se Motion for Appropriate Relief (MAR) in the Superior Court of Iredell County. (Doc. 8-13). The Honorable Joseph Crosswhite summarily denied the MAR on August 10, 2017, and again on November 9, 2017 (the second order is apparently due to inadvertent mistake). (Doc. No. 8-14; 8-15). Petitioner thereafter filed a *pro se* petition for certiorari on March 16, 2018, which the NCCOA denied on March 22, 2018. (Doc. No. 8-16; 8-17). On July 10, 2018, Petitioner filed a *pro se* motion to dismiss, squash, set aside, or vacate his habitual felon indictments, which the NCSC dismissed on August 14, 2018. (Doc. No. 8-18; 8-19).

On March 12, 2019, Petitioner filed the instant *pro se* Federal Habeas Petition before this Court. (Doc. No. 1). Therein, Petitioner alleged five separate grounds for relief. Specifically, petitioner argues: (1) that his "conviction was obtained by use of evidence obtained by unreasonable search and seizure;" (2) that he was subjected to double jeopardy; (3) violation of the constitutional prohibition against ex post facto laws; (4) that his Alford plea was breached; and (5) that he received ineffective assistance of counsel. Id.

Respondent filed an answer to Petitioner's FHP on June 11, 2019. (Doc. No. 6). The same day, Respondent filed a Motion for Summary Judgement, along with a Memorandum in Support. (Doc. Nos. 6, 7). On June 20, 2019, the Court entered a Roseboro Order notifying Petitioner of the burden he carries in responding to Respondent's Motion. (Doc. No. 10). Petitioner subsequently filed a response to Respondent's Motion for Summary Judgment on June 26, 2019. (Doc. No. 11). Petitioner filed a Notice of Amended Complaint under 28 U.S.C. § 2554 on April 8, 2020. (Doc. No. 23). However, Petitioner's right to amend without leave of court or the written consent of Respondent was extinguished upon the filing of a responsive pleading. See Fed. R. Civ. P. 15(b);

see also Vanguard Mil. Equip. Corp. v. David B. Finestone Co., Inc., 6 F.Supp.2d 488, 491–92 (E.D. Va. 1997). Thus, the Notice of Amended Complaint is of no effect for purposes of this Court's habeas review.

## II.     LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Thus, to withstand a motion for summary judgment, the non-moving party must proffer competent evidence sufficient to reveal the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246-47 (1986).

In determining whether a "genuine issue of material fact" exists, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Erwin v. United States, 591 F.3d 313, 327 (4th Cir. 2008). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 246-47. Rather, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Thompson v. Carlisle, 2010 WL 382044, at *1 (4th Cir. Feb. 3, 2010). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

In addition to the motion for summary judgment standard set forth above, this Court must also consider the petition for writ of habeas corpus under the requirements set forth in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d). The habeas statute at 28 U.S.C. § 2254 articulates that a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Absent violation of a Federal constitutional right, a habeas petitioner fails to state a cognizable claim for relief. Wilson v. Corcoran, 562 U.S. 1, 14 (2011) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.").

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), limits the federal court's power to grant habeas relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses contained in § 2254(d)(1) are to be given independent meaning—in other words, a petitioner may be entitled to habeas corpus relief if the state court adjudication was either contrary to or an unreasonable application of clearly established federal law. This standard is intentionally "difficult to meet." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quote and citation omitted). "'[C]learly

established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.'" Id. (quoting Howes v. Fields, 565 U.S. 499, 505 (2012)) (internal quote and citation omitted) (first alteration in original).

A state court decision can be "contrary to" clearly established federal law in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (plurality opinion). "And an 'unreasonable application of' [clearly established Federal law] must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 572 U.S. at 419 (quoting Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003)). "Rather, '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Woodall, 572 U.S. at 419-420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

### III.     ANALYSIS

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007); King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil

6

Procedure for "all civil actions"). With these principles in mind, the Court turns to Petitioner's grounds for relief.

**A. Unreasonable Search and Seizure**

Petitioner argues that, on May 1, 2013, Statesville Police conducted a search of 135 Oak Knoll Drive, without a warrant, probable cause, or permission. (Doc. No. 1). During the execution of this search, discovered the existence of a controlled substance, and defendant was subsequently arrested. (Doc. No. 7-4 at 75–79). In denying Petitioner's motion to suppress the evidence, the Honorable Judge Bragg concluded that the search violated neither the U.S. Constitution, nor the Constitution of North Carolina. Id. at 78.

Pursuant to § 2254, "the determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2554(e)(1). Judge Bragg's Order on Petitioner's motion to suppress includes factual findings and conclusions of law articulating: Petitioner resided at the address searched; Petitioner was on probation at the time of the search; that as a condition of his probation, Petitioner's probation officer had legal authority to conduct a warrantless–although reasonable–search of petitioner's residence, person, or vehicle; and that, "Petitioner consented to the search of his person and residence." (Doc. No. 7-4 at 75-79).

Under the deferential standards of § 2554, Judge Bragg's Order must be upheld if it is not contrary to, nor based on an unreasonable application of clearly established federal law, and did not result in an unreasonable decision under the facts and circumstances of the case. See 28 U.S.C. § 2554(d)(1)-(2). The Court is not persuaded that this is the case here. The federal courts have consistently held that searches validly consented to are constitutional. See Ohio v. Robinette, 519 U.S. 33 (1996) (consent search upheld); United States v. Watson, 423 U.S. 411 (1976) (consent given

7

while under valid arrest held voluntary); United States v. Tyson, 360 F. Supp. 2d 278 (E.D. Va. 2005) (defendant's consent to a warrantless search of his residence was voluntary).

Further, the petitioner for a Writ of Habeas Corpus has the burden of rebutting the presumption that a state court's decision is incorrect by clear and convincing evidence. 28 U.S.C. § 2554(e)(1). Petitioner has not carried his burden, as he failed to provide any evidence or reasoning to rebut this presumption. (Doc. No. 1.)

Finally, Petitioner was given a full and fair opportunity to raise and litigate his Fourth Amendment claim, and did so in multiple instances within the state court system. As previously observed, Petitioner brought this claim prior to his first trial in a suppression motion, and failed to raise the it again upon his first direct appeal. Williams, 242 N.C. App. 361, 774 S.E.2d 880. However, Petitioner thereafter re-asserted his Fourth Amendment search and seizure claim during his Alford plea proceeding on February 1, 2016. (Doc. No. 8-20). Judge Gullet found that, because Petitioner had raised this claim prior to his first trial, he had abandoned it by failing to raise it in his first appeal and was thus barred from re-litigating the claim based on collateral estoppel principles. Id. at 22. Judge Gullet's holding was affirmed by the NCCOA. Williams, 252 N.C. App. at 235-36, 796 S.E.2d at 827.

Thus, Petitioner had a full and fair opportunity to raise and litigate his Fourth Amendment search and seizure claim in the state courts, and therefore the claim is therefore barred from federal habeas review. See Stone v. Powell, 428 U.S. 465, 481–82 (1976); Wright v. West, 505 U.S. 277, 293 (1992); Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir. 1982).

**B. Double Jeopardy**

Petitioner's second ground for relief is that he was subjected to double jeopardy. (Doc. No. 1). Pursuant to the Fifth Amendment to the U.S. Constitution, "[n]o person shall be subject for the

same offense to be put twice in jeopardy of life or limb." U.S. Const., Amend. V. The Double Jeopardy clause of the Fifth Amendment has been applied to the States through the Fourteenth Amendment's Due Process clause. See Benton v. Maryland, 395 U.S. 784, 787 (1969). The Double Jeopardy clause prohibits "successive prosecutions for the same offense." Whittlesey v. Conroy, 301 F.3d 213, 216–17 (4th Cir. 2002) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).

Petitioner appears to argue that he was subjected to double jeopardy because he was indicted for PWISMD the Schedule One controlled substance "Methylethcathinone," and after the indictment was amended and thereafter vacated, he was again indicted for PWISMD "4-Methylethcathinone" based on the same conduct. The Supreme Court has held that the "same elements test" articulated in Blockburger v. United States is the appropriate measure of determining whether a violation of double jeopardy has occurred. 284 U.S. 299 (1932); United States v. Dixon, 509 U.S. 688 (1993) (confirming that the same elements test is the correct method of analysis for double jeopardy claims based on successive prosecutions for the same offense). The same elements test requires an inquiry into whether "each offense created requires proof of a different element." Blockburger, 284 U.S. at 304. If this Blockburger test is answered affirmatively, then no double jeopardy has occurred. Here, the two indictments contained alleged crimes requiring proof of different essential element than the other, as the individual offenses required proof of different illegal substances, and thus there was no double jeopardy violation.

Further, Petitioner waived his right to assert a claim for double jeopardy by entering his knowing, voluntarily, counseled guilty plea. (Doc. No. 8-20). United States v. Broce, 488 U.S. 563, 565 (1989) (holding that double jeopardy challenges are "foreclosed by…guilty pleas and judgments of conviction").

Petitioner did not articulate precisely the basis upon which he was subjected to double jeopardy. (Doc. No. 1). Respondent presents an additional argument that Petitioner may be asserting on this ground. (Doc. No. 7 at 8–10). It is possible that Petitioner is arguing, as he did at the state court level, that the General Assembly did not intend to allow multiple separate convictions and sentences when two Schedule One controlled substances are "mixed." (Doc. No. 7 at 8). However, the NCCOA considered and thereafter dismissed this argument, finding that based on the Court's earlier finding in State v. Hall, Petitioner "could be punished for two offenses where two different drugs are found in the same material, compound, mixture, or preparation." State v. Williams, 252 N.C. App. 231, 233-35, 796 S.E.2d 823, 825-26 (citing State v. Hall, 203 N.C. App. 712, 717–18, 692 S.E.2d 446, 451 (2010) (internal quotation marks omitted); see also N.C. Gen. Stat. § 90-89(5).

Because Petitioner's double jeopardy claim is based on state drug offenses and has been analyzed and denied by the NCCOA, the Court must defer to its determination. See Thomas v. Warden, 683 F. 3d 83, 85 (4th Cir. 1982) ("When the [double jeopardy] claim is made in relation to state offenses, federal courts are essentially bound by state court interpretations of state legislative intent on this score."); see also Jones v. Sussex I State Prison, 591 F.3d 707, 710 (4th Cir. 2010).

Petitioner raised his double jeopardy claim once more in his MAR, and Judge Crosswhite denied the claim on the merits. (Doc. No. 7-14; 7-15). In his federal petition, Petitioner fails to identify any case law or other grounds indicating that the state courts' decisions to deny his double jeopardy claim were contrary to clearly established federal law. (Doc. No. 1). Accordingly, under

10

the highly deferential lens of § 2254, this Court does not find that the state courts were unreasonable in denying Petitioner's double jeopardy claim. 28 U.S.C. § 2254(d).

### C. Ex Post Facto Laws

Petitioner lists his third ground for relief as a "violation of U.S. Constitutional Amendment XIV by application of new law or novel interpretation of existing law ex post facto." (Doc. No. 1). The crux of Petitioner's argument is that he was not put on notice that he could be convicted for two separate offenses by possessing one mixture containing two Schedule One controlled substances under N.C.G.S. § 90-89(5)(j). Petitioner asserts that this was a "departure from clearly established common law and the plain language of the statute." Id. However, Petitioner points to no evidence to support this assertion. He does not indicate any other cases where North Carolina courts have held that possession of a mixture containing two schedule one controlled substances constitutes a single offense under N.C.G.S. 90-89(5)(j) which might indicate that this decision was a "departure from clearly established common law." Id.

In fact, the NCCOA convincingly addressed this matter and noted its prior holding that a defendant could be convicted of two separate offenses and charged separately for each when he possessed a mixture containing any quantity of a controlled substance. Williams, 252 N.C. App. at 233-35, 796 S.E.2d at 825-26; see Hall, 203 N.C. App. at 717-18, 692 S.E.2d at 451.

Additionally, Petitioner waived the ability to bring this claim when he entered his knowing, voluntary, and counseled guilty plea. (Doc. No. 7-20). See Blackledge v. Perry, 417 U.S. 21, 29 (1974) ("[W]hen a criminal defendant enters a guilty plea, 'he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea.'") (quoting Tollet, 411 U.S. at 266).

11

Petitioner has raised this claim multiple times, and in each instance, it has been dismissed by the courts of North Carolina. As noted above, Petitioner brought this claim before the NCCOA, and he also raised this claim in his MAR, which Judge Crosswhite summarily denied on the merits in each of his orders. (Doc. No. 7-14, 7-15). Again, given the high level of deference afforded to state court determinations under federal habeas review, the Court is inclined to defer to Judge Crosswhite's decision. See Harrington, 562 U.S. at 103; 28 U.S.C. § 2554(d). Judge Crosswhite correctly applied state law in finding that, as Petitioner failed to raise this ex post facto claim on direct appeal, he was procedurally barred from doing so from that point forward. (Doc. No. 7-15); see N.C.G.S. 15A-1419(a)(3) (grounds for denial of an MAR include situations in which "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so"). Thus, this claim is procedurally barred from federal habeas review.

### D. Breach of Plea Agreement

Petitioner's fourth ground for relief is that his plea agreement was breached when the NCCOA asserted collateral estoppel to deny his claim against the State for allegedly violating Petitioner's Fourth Amendment rights through its "unreasonable search and seizure." (Doc. No. 1). Petitioner's argument, however, does not constitute a "genuine issue of material fact" such that Respondent's Motion for Summary Judgment should be denied. Fed. R. Civ. P. 56(e)(2).

On February 1, 2016, Petitioner entered an Alford plea admitting guilt to possession of Schedule I controlled substances and admitting his status as a habitual felon in cases 15 CRS 3580-81. (Doc. No. 8-20 at 29). As the transcript of the plea bargain indicates, Petitioner reserved the

right to (and therein gave notice of his intent to) appeal the suppression motion in connection with his Fourth Amendment claim. Id. at 28–29.

The NCCOA addressed Petitioner's Fourth Amendment claim in its March 7, 2017 opinion, and subsequently concluded that the claim was estopped, as it had been fully litigated and properly denied by the trial court. Williams, 252 N.C. App. at 235–36, 796 S.E.2d at 826–27. Plaintiff was made aware of the potential that his claim may be dismissed on grounds of collateral estoppel prior to the NCCOA decision. Indeed, Judge Gullet noted during the plea bargain that, with respect to the Fourth Amendment unreasonable search and seizure claim, Petitioner was "collaterally estopped from relitigating what's already been litigated." (Doc. No. 8-20 at 23). Petitioner's plea bargain demonstrates that he reserved the right to give notice of his intent to appeal the denial of his motion to suppress, and this was honored. Thus, there was no breach of Petitioner's plea agreement.

### E. Ineffective Assistance of Counsel

Petitioner's final ground for relief is based on the alleged ineffective assistance of counsel he received from his attorney, Alexander Mendaloff, III. (Doc. No. 1 at 15). To support this assertion, Petitioner claims that, "counsel urged [him] to dispose of the pending charge by tendering an Alford plea and reserving his right to appeal." Id. Petitioner further alleges counsel indicated to him that "appeal would result in automatic reversal," after which "he could attack the sentence he was serving." Id. As a result of this plea bargain, Petitioner argues that he received a sentence far beyond the bounds of acceptable guidelines. Id. The Court is not convinced by Petitioner's arguments on this claim.

In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance claim. 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious

13

that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id.

In reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. For an ineffective assistance of counsel claim, "to satisfy the 'prejudice' requirement, the defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58 (1985).

"[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel .... [t]he AEDPA standard and the Strickland standard are dual and overlapping, and [the court] appl[ies] the two standards simultaneously rather than sequentially." Lee v. Clarke, 781 F.3d 114, 123 (4th Cir. 2015), as amended (Apr. 15, 2015) (quoting Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012)) (internal quotation marks omitted). Because both standards of review are "'highly deferential' to the state court's adjudication ..., 'when the two apply in tandem, the review is doubly so.'" Id. (quoting Richardson, 688 F.3d at 139).

In considering the evidence in the light most favorable to Petitioner, the Court finds that this standard cannot be met. Petitioner agreed to the plea bargain while mentally competent and sober from the influence of drugs, alcohol, or other substances. (Doc. No. 8-20 at 25–26). Petitioner agreed Counsel had explained to him the charges he faced and each element of those

14

charges, and any possible defenses he may assert. (Id. at 26). He agreed Counsel had informed him of the nature of the Alford plea and its implications, and the transcript of the plea bargain indicates that he was informed of the constitutional rights he waived by pleading guilty, in addition to the limitations upon his right to appeal. (Id. 26–29). Petitioner, under the advice of counsel, accepted the Alford plea. Petitioner, with the advice and assistance of counsel, reserved the right to give notice of his intent to appeal the denial of his suppression motions, and this notice was given during the proceeding. Id. at 28–29. Petitioner also expressed his satisfaction with his lawyer's services. Id. at 26–27.

Petitioner does not argue that he would have not pled guilty, and would instead have gone to trial, if counsel had acted differently. He maintains that his sentence was excessive under the guidelines, an assertion which is without merit on federal habeas review. Indeed, Judge Gullet noted during the plea bargaining that "the total maximum punishment" for the offenses Petitioner faced equaled to an amount of 112 months. Id. at 29-30. Given that Petitioner's sentence pursuant to the plea bargain was 41-62 months, an amount far less than that he faced without it, it is unclear how he arrives at the conclusion that he received a sentence in excess of the applicable guidelines. Id. at 33–34.

A petitioner bears the burden of establishing his counsel's deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir.1994). Although Petitioner here alleges that Counsel informed him that he would be successful on appeal, there is no evidentiary support to this bare assertion. (Doc. No. 1 at 15). Petitioner provides no evidence whatsoever or any facts in support of his claim and this Court finds his unsupported, conclusory allegations wholly insufficient to support an ineffective assistance of counsel claim on this issue. See Nickerson v. Lee, 971 F.2d

1125, 1136 (4th Cir.1992) ("[A] habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), *abrog'n on other grounds recog'd*, Yeatts v. Angelone, 166 F.3d 255 (4th Cir.1999); see also Gary v. United States, No. 3:00CR199-MU, 2008 WL 3981465, at *2 (W.D.N.C. Aug. 22, 2008).

Further, Petitioner raised his ineffective assistance of counsel claim in his MAR, which, as noted above, was denied by Judge Crosswhite on the merits. (Doc. No. 8-13; 8-14; 8-15). Given the deferential standard of review contained in 28 U.S.C. § 2554(d) and (e), the judgment of the state court is presumed to be correct, and without Petitioner's rebuttal of this presumption by clear and convincing evidence, the state court judgment should be upheld.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Respondents' Motion for Summary Judgment (Doc. No. 7) is GRANTED,
2. Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1) is DENIED, and
3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural

ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

IT IS SO ORDERED.

Signed: May 4, 2020

Frank D. Whitney
Chief United States District Judge